MATTHEWS v DEPARTMENT OF NATURAL RESOURCES

Docket No. 288040. Submitted January 12, 2010, at Grand Rapids. Decided April 6, 2010, at 9:05 a.m.

Glen J. and Carol J. Matthews and others brought an action in the Mecosta Circuit Court against the Department of Natural Resources, alleging that they have a prescriptive easement to access their landlocked property through certain state-owned land and to maintain a pathway of several hundred wooden pallets laid end-to-end across the wetland area of the state land for such purposes. The trial court, Scott Hill-Kennedy, J., held that plaintiffs proved a prescriptive easement across the state-owned land and could continue to use the pallet pathway without obtaining a statutorily required permit to place fill material or maintain a use in a wetland. Defendant appealed.

The Court of Appeals *held*:

1. Before March 1, 1988, claims of adverse possession or prescriptive easement were allowed against the state. Effective March 1, 1988, the Legislature amended the relevant statute, MCL 600.5821(1), to provide that a person may not acquire title to state-owned property through adverse possession or prescriptive easement. The statute, however, does not operate to extinguish rights that vested before March 1, 1988.

2. Assuming all other elements have been established, one gains title by adverse possession when the period of limitations expires, not when an action regarding the title to the property is brought.

3. A prescriptive easement results from open, notorious, adverse, and continuous use of another's property for 15 years and requires elements similar to adverse possession, except exclusivity. Plaintiffs must demonstrate an entitlement to a prescriptive easement by clear and cogent evidence.

4. Defendant did not dispute that plaintiffs' use was open, notorious, and adverse, but disputed whether their use had been continuous for a 15-year period. Because none of the plaintiffs had any ownership interest in the landlocked property until at least 1984, they must show privity of estate by tacking on the possessory

periods of their predecessors-in-interest to achieve the necessary 15-year period. Privity may be shown in one of two ways: including a description of the disputed acreage in the deed or by an actual transfer or conveyance of possession of the disputed acreage by parol statements made at the time of conveyance. Plaintiffs' deeds did not convey an easement across the state land. The facts of this case show that plaintiffs, who were well acquainted with their predecessors-in-interest, must have understood that an easement was appurtenant to the land. It was undoubtedly the original owners' intent to transfer their rights to the easement to plaintiffs. The parol transfer requirement can also be satisfied in the limited circumstances where the tacking property owners are well acquainted with the predecessors-in-interest and there is clear and cogent evidence that the predecessors-in-interest undoubtedly intended to transfer their rights to their successors-in-interest, for example, by showing that the successors had visited and remained on the property and had used it for many years before their acquisition of title. When, as in this case, predecessors and successors are so intimately acquainted, it would not be reasonably expected for the predecessors to expressly articulate to the successors a right that all parties already believed they possessed. The trial court correctly held that plaintiffs could tack their prescriptive use with that of their predecessors-in-interest because under the circumstances they were able to show privity through their continual, prior use of the easement.

5. The trial court did not violate the provisions of the Natural Resources and Environmental Protection Act, MCL 324.101 *et seq.*, or the separation of powers doctrine when it recognized that plaintiffs had established the existence of a prescriptive easement, however, the court was not permitted to disregard the statutory requirements when determining the scope of the easement. Plaintiffs have a duty to follow the applicable laws and regulations affecting the land over which their easement extends. The trial court erred by judicially creating an additional exception to the statutory permit requirements by holding that plaintiffs could be exempted from the permit requirement as long as they took efforts to minimize their intrusive activities. The trial court erred by holding that plaintiffs were allowed to continue maintaining the pallet pathway without obtaining a permit.

Affirmed in part and reversed in part.

1. EASEMENTS — PRESCRIPTIVE EASEMENTS — PRIVITY OF ESTATE — TACKING.

Privity of estate, for purposes of tacking on the possessory periods of predecessors-in-interest and successors-in-interest to determine if the period of limitations for a prescriptive easement has been

satisfied, may be shown in one of two ways: by including a description of the disputed acreage in the deed or by an actual transfer or conveyance of possession of the disputed acreage by parol statements made at the time of the conveyance; the parol transfer requirement can also be satisfied in the limited circumstances where the successors-in-interest are well acquainted with the predecessors-in-interest and there is clear and cogent evidence that the predecessors-in-interest undoubtedly intended to transfer their rights to the successors-in-interest, for example, by showing that the successors-in-interest had visited and remained on the property and had used it for many years before acquiring title to the property and, therefore, it would not be reasonably expected for the predecessors to expressly articulate to the successors a right that all parties already believed they possessed.

2. EASEMENTS — PRESCRIPTIVE EASEMENTS — STATUTES — REGULATIONS.

A property owner with a prescriptive easement has a duty to follow any applicable laws and regulations affecting the land over which the easement extends.

*Lynch, Gallagher, Lynch, Martineau & Hackett, P.L.L.C.* (by *Mary Ann J. O'Neil* and *Jennifer M. Galloway*), for plaintiffs.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Marie Shamraj* and *Daniel P. Bock*, Assistant Attorneys General, for defendant.

Before: K. F. KELLY, P.J., and HOEKSTRA and WHITBECK, JJ.

PER CURIAM. This case arises out of the alleged right of certain landlocked property owners to maintain and use a crude pathway (several hundred wooden pallets laid end-to-end) across a state-owned and -regulated wetland. Defendant, Department of Natural Resources[1] (the Department), appeals as of right the trial court's

---

[1] The Department of Natural Resources was abolished and replaced by the Department of Natural Resources and Environment, MCL 324.99919, effective January 17, 2010.

order entering judgment in favor of plaintiffs, Glen Matthews, Carol Matthews, Kevin Matthews, Stephanie Matthews, Martin Schaeffer, and Ann Schaeffer[2] (collectively, the landlocked property owners). The Department argues that the trial court erred by finding that privity existed between the landlocked property owners and their predecessors-in-interest when there was no mention of an easement in the deeds and it was undisputed that the issue of an easement was never discussed with the previous owners. The Department also contends that the trial court erred by allowing the landlocked property owners to place fill material in a regulated wetland without obtaining a permit.[3] The landlocked property owners respond that the trial court properly found that they had established privity between them and their predecessors-in-interest on the basis of their prior use of the landlocked parcel. The landlocked property owners also contend that the trial court properly balanced common-law provisions against statutory provisions and held that the various rights sought to be protected by those laws weighed in favor of the landlocked property owners. We affirm in part and reverse in part.

I. BASIC FACTS AND PROCEDURAL HISTORY

In 1969, Arthur Funnell and his wife, Edna Funnell;

---

[2] We note that the spelling of the surname "Schaeffer" varies in the record. However, for consistency, we will use this spelling throughout this opinion.

[3] Although the Department is responsible for administration and control of state-owned land, MCL 324.503(1), at the time of the lower court proceedings in this action, the Department of Environmental Quality was vested with authority for regulating uses of wetlands, MCL 324.30301 *et seq*. The Department of Environmental Quality was abolished and replaced by the Department of Natural Resources and Environment, MCL 324.99919, effective January 17, 2010, and the powers and duties of the former department are now assigned to the Department of Natural Resources and Environment.

their son, Melvin Funnell, and his wife, Betty Funnell; and their daughter, Joyce Schaeffer, and her husband, Robert Schaeffer (collectively, the Funnells), purchased the landlocked parcel, which consisted of 40 acres of property in Sheridan Township, Mecosta County, Michigan. Each of the three couples received an undivided 1/3 interest. The prior owners were Albert and Delila Anderson, who purchased the landlocked parcel from the state of Michigan in 1937. Arthur Funnell intended to use the landlocked parcel as a seasonal hunting camp. The landlocked parcel has no direct access to any public road. To the north and west, it is surrounded by state-owned property. And to the east and south, it is surrounded by private property. Plaintiff Glen Matthews testified at trial that his father-in-law, Arthur Funnell, had specifically sought out an inexpensive parcel of land and that he purchased the landlocked parcel with full knowledge that it was landlocked. Glen Matthews also testified that, although the family was not specifically looking for a landlocked parcel, landlocked land is less expensive than properties with road access.

The state-owned land that surrounds the landlocked parcel on two sides is part of the Martiny Lakes State Game Area. The nearest maintained road is Madison Road, located approximately one mile to the north of the landlocked parcel. There is an old two-track logging road that extends from Madison Road through the state land. This two-track road ends approximately 0.22 miles short of the landlocked parcel.

Over time, the Funnells transferred their ownership interests to the landlocked property owners. The landlocked property owners are all members of Arthur Funnell's family, either by blood or affinity. In February 1984, Arthur Funnell's widow, Edna Funnell, deeded her 1/3 interest to their daughter Carol Matthews and

her husband Glen Matthews. In May 1996, Melvin Funnell's widow, Betty Funnell, deeded her 1/3 interest to her nephew, Martin Schaeffer, and his wife, Ann Schaeffer. And in January 1998, Robert Schaeffer's widow, Joyce Schaeffer, deeded her 1/3 interest to her nephew, Kevin Matthews, and his wife, Stephanie Matthews.

The landlocked property owners and their predecessors (the Funnells) visited the property during hunting season in the late 1960s, accessing it by foot. Initially, they would walk across an adjacent parcel of privately owned land. However, shortly thereafter, the owner of that private land asked them to stop crossing that land, so the Funnells began parking at the end of a trail just off Madison Road, and would then walk the rest of the way across the state-owned land. Around 1975, they were able to drive a little further off Madison Road because the two-track road had been created for logging purposes on the state land. They were unable to drive further than the end of the two-track road because the ground was too wet and swampy. In the early 1970s, they began using snowmobiles to traverse the swamp and then later used all-terrain vehicles.

From the time that the Funnells first acquired the landlocked parcel, they would place some dead wood from the surrounding forest in particularly wet areas of the state-owned land to help them traverse it. However, in 1984 or 1985, the landlocked property owners began to place wooden pallets on the ground in the swamp area to make it more passable. This resulted in the construction of a pathway of pallets that stretches 0.22 miles (or 1,200 feet), from the end of the two-track road to the landlocked parcel.

The landlocked property owners testified that in addition to using the land as a hunting camp, they used

the land and the cabin thereon essentially as a family retreat, with couples spending quiet weekends there together or with numerous family members gathering to celebrate holidays together.

Glen Matthews testified that there was no discussion about access or an easement at the time the property was conveyed to him. Carol Matthews explained that there was no need for a specific discussion regarding access because Glen and Carol Matthews took it for granted that the two-track road and the pallet path were the sole means to get to the property. Carol Matthews also explained that the transfer of interest from the Funnells was just a formality because the landlocked property owners "were always involved." Martin and Ann Schaeffer similarly testified that there was no discussion about access or an easement at the time the property was conveyed to them because they had never accessed the property in any manner other than by going across the two-track road and the pallet path. Kevin Matthews, however, testified he and his uncles, Robert Schaeffer and Melvin Funnell, did have specific discussions about how to access the property before he took ownership. Kevin explained that Robert and Melvin told him that they had "pretty much exhausted any other alternatives on how to get in and out" and that the pallet path was the best route.

The Department's wildlife habitat biologist, Jeffrey Greene, was assigned to Mecosta County in 1998. In the course of his duties, he noted that there was evidence of illegal activities on the state land between Madison Road and the landlocked parcel. He noticed dumping of trash, piles of new pallets at the end of the two-track road, and old pallets placed in the swamp south of the end of the two-track road. (Greene, however, did not suspect the landlocked property owners of dumping the

trash, and the Department concedes that there is no reason to believe that they were responsible.) However, Greene testified that pallets harm the wetland by breaking down wetland vegetation and increasing soil erosion and sedimentation. Greene also testified that the pathway of pallets presented not only harm to the wetland, but also a danger to hunters on the state-owned land. According to Greene, the pallets were slippery, with nails protruding from them; thus, he was concerned about the safety of hunters who may walk on them.

Additionally, Greene noted that the illegal use of motorized vehicles[4] has resulted in harm to the wetland and was the very reason why the trail was becoming more difficult to traverse. The motorized vehicle usage had torn up the wetland and created holes, which vehicles could then sink into and get stuck. Because of these activities and the risks of harm to the hunters, wetland, and wildlife, Greene spoke with his supervisor about closing the two-track road. On August 21, 2003, a gate was placed off Madison Road, cutting off vehicular access to the two-track road.

On August 25, 2003, Greene met with three of the landlocked property owners. Greene offered to issue a key to the gate and a use permit, which would allow the landlocked property owners to open the gate and access the two-track road for a period of one year. But the landlocked property owners did not respond. Greene also requested that the landlocked property owners assist him in removing the pallets and proposed that

_____

[4] It is illegal to use an off-road recreation vehicle (including a snowmobile or all-terrain vehicle) in a state game area except on roads, trails, or areas designated for such purpose. MCL 324.81133(e). Additionally, it is illegal to operate an off-road recreation vehicle in a wetland. MCL 324.81133(o). It is not illegal to travel by foot through a state game area.

they could replace the pallets with proper walkways over the wetter spots of the trail. But the landlocked property owners declined this suggestion, instead inquiring about the possibility of obtaining an easement across the state-owned land from the Department. Greene provided them with the Department's easement application, but the landlocked property owners never applied because they heard that it was unlikely that the Department would grant their request. The landlocked property owners filed this action, alleging that they had a prescriptive easement to access their landlocked parcel through the state-owned land and to maintain the pathway of pallets through the state-owned wetland area. The landlocked property owners requested a judgment allowing them ingress and egress to the landlocked parcel by vehicle, all-terrain vehicle, and snowmobile. (The landlocked property owners also alleged an implied easement, but that issue has not been raised again on appeal and we will not discuss it further).

On March 13, 2008, at the end of a three-day bench trial, the trial court ruled from the bench that the landlocked property owners had proven a prescriptive easement across the state-owned land to access their property. The trial court held that the landlocked property owners were required to demonstrate that they used state-owned land to access their parcel in a way that was open, notorious, and hostile for a period of 15 years before March 1, 1998 (the date on which a statute barred prescriptive easement actions against the state.) The trial court found that a parol grant of an easement did occur because the landlocked property owners and their predecessors had continually used the pathway and had always assumed that they would be able to cross the state-owned land to access their property. According to the trial court,

the behavior of the many parties having participated in going back and forth on this property, and clearly understanding that it was accessed by this easement, leaves no doubt that there was privity, leaves no doubt that there was parol indications or information known or made known to these parties at the time the property was conveyed from one family member or a group of family members to another family member or a group of family members. I am not saying there were actual words, but I think the activities of using the property for such a long time left no doubt as to what was understood to be part of the conveyance.

In April 2008, the trial court issued a posttrial written judgment. The trial court confirmed its holding that the landlocked property owners had established a prescriptive easement. However, the trial court requested that the parties submit posttrial briefs on the issue of the scope of the prescriptive easement.

On September 11, 2008, after receiving the posttrial briefs and conducting a telephone conference, the trial court issued a written opinion and order. The trial court first cited caselaw indicating that easement holders are generally allowed to do such acts as are necessary to make effective use and enjoyment of the easement and that the scope of the easement is largely determined by what is reasonable under the circumstances. The trial court then turned to the provisions of the Natural Resources and Environmental Protection Act (NREPA), which prohibits people from placing fill material in the wetlands.[5] The trial court acknowledged that "[a]llowing Plaintiffs to continue to use the easement as they have historically done would appear to violate the above provisions of [the NREPA]" but then qualified that statement by stating that the trial court could "excuse[]" the violation "by [its] decision that a

[5] MCL 324.30304(a).

prescriptive easement has been established." The trial court went on to note that the NREPA did allow for certain easement exceptions for construction of various types of roads and pipelines, and then stated that "[w]hile Plaintiffs' easement does not fit into one of these categories, it is apparent that the Legislature recognized that certain other rights would be balanced against, and in some cases take priority over the protection of wetland areas through elimination of any possibly intrusive activities." The trial court then explained its understanding that the landlocked property owners'

> use of the private property would be materially curtailed if they are not allowed to place something on the path to allow motorized vehicles to travel to and from their private property. Walking or skiing would be the only means of ingress and egress at times when the ground and/or water are not frozen. Based on age and physical limitations, this limits the ability of some of the plaintiffs to visit the property. It also limits hauling of supplies and other items during deer hunting season and again limits participation in this activity by some of the plaintiffs.

The trial court also acknowledged that the state had significant interests in protecting the integrity and value of the wetlands. The trial court then went on to note the difficulty in attempting to strike a balance between the parties' competing interests: "Both interests are significant, and it is well recognized that they are to be protected. So, what is the balance to be struck?"

The trial court "reject[ed]" the Department's recommended solutions:

> Requiring permitting likely means that numerous steps must be taken, which likely would include the installation of a boardwalk, engineered floating pads, or a similar structure by Plaintiffs over the full .22-mile path. Based on

the limited relevant testimony at trial, a cost of $40,000 or more was suggested for installation of a boardwalk. The Court finds that requiring a boardwalk or engineered floating mat over the full .22 miles [sic] path is unreasonable. It would likely be prohibitively expensive for plaintiffs and also likely would in effect deny Plaintiffs the reasonable enjoyment of their property rights.

The trial court then continued:

Moreover, adopting Defendant's proposed solution would require Plaintiffs to seek permits and approval for their uses from Defendant, effectively placing the determination of the scope of the easement (or the existence of the easement at all) in the hands of the Defendant and not the Court. Effectively, this would mean the Plaintiffs had achieved nothing in establishing the existence of the easement. Despite the possibility that the Plaintiffs might be able to comply with the permitting process and still enjoy the benefits of their easement, the likely outcome of the process is speculative on this record. Plaintiffs likely would have no greater rights than the general public with respect to their easement.

Although noting the potential harm to the wetland ecosystem by continued use of the pallets, the trial court nevertheless ruled that the landlocked property owners could continue to maintain and use their makeshift pallet pathway to traverse the regulated wetland without applying for or obtaining a statutorily required permit from the Department of Environmental Quality.

The Department now appeals the trial court's rulings that the landlocked property owners demonstrated the requisite privity to allow them to tack their periods of prescriptive use with those of the predecessors-in-interest and that the landlocked property owners could place fill material and maintain a use in a wetland without obtaining a permit from the Department of Environmental Quality.

## II. TACKING AND PRIVITY

### A. STANDARD OF REVIEW

The Department argues that the trial court erred by finding that privity exists when there was no mention of an easement in the deeds and it was undisputed that the issue of an easement was never discussed with the previous owners at the time of the conveyances.

Actions to quiet title are equitable, and we review the trial court's holdings de novo.[6] However, we review the trial court's findings of fact for clear error.[7]

### B. ANALYSIS

Generally, the period of limitations for the recovery or possession of land is 15 years.[8] However, it is well settled that "[t]he statute of limitations for recovering real property does not run against the state or state agencies, . . . unless there is legislation to the contrary."[9] Before March 1, 1988, legislation to the contrary did exist that allowed claims of adverse possession or prescriptive easement against the state.[10] Effective March 1, 1988, however, the Legislature, in 1988 PA 35,

---

[6] *Gorte v Dep't of Transportation*, 202 Mich App 161, 165; 507 NW2d 797 (1993).

[7] *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 117; 662 NW2d 387 (2003).

[8] MCL 600.5801(4).

[9] *Gorte*, 202 Mich App at 165, citing *Caywood v Dep't of Natural Resources*, 71 Mich App 322; 248 NW2d 253 (1976).

[10] *Gorte*, 202 Mich App at 165. Before March 1, 1988, MCL 600.5821(1) provided:

> No action for the recovery of any land shall be commenced by or on behalf of the people of this state unless it is commenced within 15 years after the right or title of the people of this state in the land first accrued or within 15 years after the people of this state or those from or through whom they claim have been seised

amended MCL 600.5821(1) and reinstated the common-law rule that one cannot acquire title to state-owned property through adverse possession or prescriptive easement.[11] MCL 600.5821(1) now provides:

> Actions for the recovery of any land where the state is a party are not subject to the periods of limitations, or laches. However, a person who could have asserted claim to title by adverse possession for more than 15 years is entitled to seek any other equitable relief in an action to determine title to the land.

Interpreting the amended MCL 600.5821(1), this Court has held that, because the Legislature removed the prior language that permitted the running of the limitations period, the period of limitations for adverse possession can no longer run against the state.[12] This Court clarified, though, that "§ 5821, as amended, cannot be applied to plaintiffs if it would abrogate or impair a vested right."[13] Therefore, "[t]he statute does not operate to extinguish rights that have vested before the effective date of the statute, March 1, 1988."[14]

"Because the statute cannot be applied if it would abrogate or impair a vested right," it is necessary to determine when the plaintiffs' claim of title to the property vested.[15] The party claiming a prescriptive easement is vested with title to the land upon the expiration of the period of limitations, "and this title is good against the former owner and against third par-

---

or possessed of the premises, or have received the rents and profits, or some part of the rents and profits, of the premises.

[11] *Gorte*, 202 Mich App at 166.

[12] *Id.* at 167.

[13] *Id.*

[14] *Higgins Lake*, 255 Mich App at 119.

[15] *Gorte*, 202 Mich App at 168.

ties."[16] In other words, "the expiration of the period of limitation terminates the title of those who slept on their rights and vests title in the party claiming adverse possession. Thus, assuming all other elements have been established, one gains title by adverse possession when the period of limitation expires, not when an action regarding the title to the property is brought."[17]

"An easement represents the right to use another's land for a specified purpose."[18] In other words, " '[a]n easement does not displace the general possession of the land by its owner, but merely grants the holder of the easement qualified possession only to the extent necessary for enjoyment of the rights conferred by the easement.' "[19] A prescriptive easement results from open, notorious, adverse, and continuous use of another's property for a period of 15 years.[20] A prescriptive easement requires elements similar to adverse possession, except exclusivity.[21] The plaintiff bears the burden to demonstrate entitlement to a prescriptive easement by clear and cogent evidence.[22]

The Department does not dispute that the landlocked property owners have met the requirements of showing that their use was open, notorious, and adverse. Rather, the Department contends that the landlocked property owners have failed to show continuous use of the property for a period of 15 years.

---

[16] *Id.*

[17] *Id.* at 168-169 (citation omitted).

[18] *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 678; 619 NW2d 725 (2000).

[19] *Id.* at 679 n 2, quoting *Schadewald v Brulé*, 225 Mich App 26, 35; 570 NW2d 788 (1997) (alteration added).

[20] *Higgins Lake*, 255 Mich App at 118.

[21] *Id.*

[22] *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001).

As explained above, in order to claim a prescriptive easement against the state, the landlocked property owners have to show that they possessed the easement for a full 15 years before March 1, 1988. In other words, they have to show that they began to use the claimed easement on March 1, 1973, or before. However, none of the current landlocked property owners had any ownership interest in the landlocked parcel until at least 1984. Therefore, in order for their claim to survive, the landlocked property owners have to show privity of estate by "tacking" on the possessory periods of their predecessors-in-interest to achieve the necessary 15-year period.[23] If they are able to show such "tacking," then the Department concedes that the landlocked property owners will satisfy the 15-year period because it is undisputed that the landlocked property owners' immediate predecessors-in-interest bought the property in 1969.

"[P]rivity may be shown in one of two ways, by (1) including a description of the disputed acreage in the deed, or (2) an actual transfer or conveyance of possession of the disputed acreage by parol statements made at the time of conveyance."[24]

There is no dispute that none of the landlocked property owners' deeds conveyed an easement across the state-owned land. And the Department contends that the landlocked property owners cannot show transfer by parol evidence because all the landlocked property owners admitted that no discussions took place regarding an easement or the method of accessing the landlocked parcel at the time of their respective convey-

---

[23] *Siegel v Renkiewicz Estate*, 373 Mich 421, 425; 129 NW2d 876 (1964); *Killips*, 244 Mich App at 259.

[24] *Killips*, 244 Mich App at 259 (citation omitted); see also *Siegel*, 373 Mich at 425.

ances. The landlocked property owners respond, however, pointing out that they had been visiting and using the property since the Funnells first purchased it in 1969 and that it was always understood that the only means of access to the landlocked parcel was to travel across the state land.

The Department responds to the landlocked property owners' argument, pointing out that to show privity there must be a *"parol,"* or oral,[25] statement made at the time of conveyance. The Department contends then that the landlocked property owners' mere use of the same pathway was insufficient to show privity. However, the landlocked property owners counter that contention, relying on caselaw in which the Michigan Supreme Court held that past use of a property was sufficient to meet the parol statement requirement.

In *von Meding v Strahl*,[26] the plaintiffs sought to quiet title in a 20-foot-wide lane leading to Lake Michigan and to restrain the defendants, neighboring landowners, from using the lane. On appeal, the Court held that some of the defendants, the Flanagans, had established an easement by prescription and tacking.[27] At the time the plaintiffs brought their suit, the Flanagans had owned their property from 1928 to 1941.[28] Because they had only owned their property for 13 years, the Court stated that they could sustain their prescriptive interest only if they could tack their ownership to that of the prior owner, Mrs. Dillenbeck.[29] After noting the parol transfer requirement, the Court held that the

---

[25] Black's Law Dictionary (7th ed).

[26] *von Meding v Strahl*, 319 Mich 598, 602; 30 NW2d 363 (1948).

[27] *Id.* at 614-615.

[28] *Id.* at 614.

[29] *Id.*

Flanagans could tack their use to that of their prede-
cessor based on their prior use of the lane.[30] Specifically,
the Court explained:

> We are satisfied from the record that the Flanagans,
> owners of parcel 11, were well acquainted with the Dillen-
> becks from whom they acquired the title, *that they had
> visited and remained on the property and had used the strip
> for many years prior to their acquisition of the title to the
> property*. The easement was so jointly used by the neigh-
> bors, that it was considered as appurtenant to all of the
> lands. *The conclusion is inescapable that in 1928 when the
> Flanagans purchased the land, the parties must have
> understood that an easement was appurtenant to the land,
> parcel 11. Undoubtedly it was the intention of Dillenbeck to
> transfer her rights to the easement to the Flanagans.* The
> record leads us to the conclusion that there was a parol
> transfer by Mrs. Dillenbeck to the Flanagans of her rights
> in the easement sufficient to permit the Flanagans to tack
> the prior adverse user of Mrs. Dillenbeck to their own
> adverse user to make up the prescriptive period.[31]

The Department attempts to distinguish *von Meding*
from this present case by noting that the record in *von
Meding* was "meager and complicated,"[32] whereas the
record here is "very clear." The Department also argues
that reading *von Meding* to allow for privity absent
evidence of an express parol grant would contravene the
well-established rule requiring that parol statements be
made at the time of conveyance. According to the
Department, courts should not be permitted to simply
look at the totality of circumstances and surmise that a
transfer was intended.

However, we conclude that *von Meding* is analogous
and supports a ruling in the landlocked property own-

---

[30] *Id.* at 614-615.

[31] *Id.* (emphasis added).

[32] *Id.* at 602.

ers' favor. It is important to clarify that this is not a case of an arms-length, third-party transfer. In this case, the landlocked property owners all testified that they and their family members/predecessors-in-interest had "always" used the easement. They collectively testified that they had never used any other way to access their landlocked parcel and, indeed, did not know of any other viable means of access. This is substantially similar to the facts in *von Meding* in that, here, the landlocked property owners were well acquainted with the Funnells and had visited and remained on the property and had used the pathway for many years before their acquisition of the title to the property.[33] Thus, as in *von Meding*, "[t]he conclusion is inescapable" that in 1984 when the first of the landlocked property owners began to purchase the land, the parties must have understood that an easement was appurtenant to the land.[34] As in *von Meding*, undoubtedly it was the Funnells' intention to transfer their rights to the easement to the landlocked property owners.[35]

And, while we appreciate the Department's concerns about interpreting too broadly, or even effectively contravening, the parol statement requirement, a ruling in favor of the landlocked property owners under the circumstances of this case will not operate to deteriorate the parol statement rule. We are following the *von Meding* precedent, which created a reasonable exemption to the common-law rule requiring parol statements, by holding that the parol transfer requirement can be satisfied in the limited circumstances where the tacking property owners are "well acquainted" and

---

[33] See *id.* at 614-615.

[34] See *id.* at 614.

[35] See *id.* at 614-615.

there is clear and cogent evidence[36] that the predecessors-in-interest "[u]ndoubtedly" intended to transfer their rights to their successors-in-interest, for example, by showing that the successors had "visited and remained on the property and had used [it] for many years prior to their acquisition of the title to the property."[37] Indeed, to hold otherwise would needlessly impose an artificial requirement on parties in similar circumstances and would possibly work to deny parties their otherwise properly vested rights. Where predecessors and successors are so intimately acquainted as under the facts here, it would not be reasonably expected for the predecessors to expressly articulate to the successors a right that all parties already believed they possessed.

The Department additionally argues that the trial court's finding of fact that the landlocked property owners always believed they had an easement was clearly erroneous in light of their testimony that they asked Jeffrey Greene about the possibility of acquiring an easement over the land. The Department posits that the landlocked property owners "would not have asked about acquiring an easement if . . . they already believed they owned one." This argument is without merit. As stated previously, a party claiming a prescriptive easement is vested with title to the land upon the expiration of the period of limitations.[38] Therefore, the fact that the landlocked property owners began to question their right to cross the state land after the Department began blocking their access in 2003 does not negate that their right was already vested.

---

[36] *Killips*, 244 Mich App at 260.

[37] *von Meding*, 319 Mich at 614-615.

[38] *Gorte*, 202 Mich App at 168.

Accordingly, we conclude that the trial court correctly held that the landlocked property owners could tack their prescriptive use of the state-owned land with that of their predecessors-in-interest because under the circumstances they were able to show privity through their continual, prior use of the easement.

### III. STATUTORY PERMIT REQUIREMENTS

#### A. STANDARD OF REVIEW

The Department argues that a trial court may not exempt parties from statutory permit requirements simply on the basis of its finding that the parties hold a common-law prescriptive easement across wetlands.

Actions to quiet title are equitable, and we review the trial court's holdings de novo.[39] The proper interpretation of a statute is also a question of law subject to our review de novo.[40] We review the trial court's findings of fact for clear error.[41]

#### B. ANALYSIS

The Department argues that the landlocked property owners have violated the NREPA both by placing "fill material"—the wooded pallets—in a wetland, and by constructing and maintaining a "use or development"— the pathway of pallets—in a wetland, without obtaining a permit. Specifically, § 30304 of the NREPA provides in pertinent part:

> Except as otherwise provided in this part or by a permit issued by the department under sections 30306 to 30314 and pursuant to part 13, a person shall not do any of the following:

[39] *Id.* at 165.

[40] *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 631; 563 NW2d 683 (1997).

[41] *Higgins Lake*, 255 Mich App at 117.

(a) Deposit or permit the placing of fill material in a wetland.

* * *

(c) Construct, operate, or maintain any use or development in a wetland.[42]

The Department further contends that the trial court had no authority to excuse the landlocked property owners from adhering to the statutory permit requirement. The landlocked property owners respond, arguing that the trial court was entitled to recognize an exception to the permit requirement on the basis of its perception of the desirability of "balancing" the statute against other "rights" not enumerated in the statute.

We first conclude that the trial court did not violate the NREPA or the separation of powers doctrine when it recognized that the landlocked property owners had established the *existence* of a prescriptive easement. The Michigan Supreme Court has made clear that the NREPA does not grant the Department exclusive jurisdiction to manage the land within its control.[43] Moreover, this Court has stated that the NREPA does not expressly or impliedly supersede common-law principles regarding implied easements.[44] However, we do not agree that the trial court was permitted to disregard the statutory requirements when determining the *scope* of the easement.

Here, the trial court recognized that, under common law, parties that have shown the existence of a prescrip-

---

[42] MCL 324.30304.

[43] *Burt Twp v Dep't of Natural Resources*, 459 Mich 659, 669-670; 593 NW2d 534 (1999).

[44] *Schumacher v Dep't of Natural Resources*, 256 Mich App 103, 109 n 3; 663 NW2d 921 (2003).

tive easement are "allowed to do such acts as are necessary to make effective the enjoyment of the easement, and the scope of this privilege is determined largely by what is reasonable under the circumstances."[45] The trial court then concluded that it was unreasonable to require the landlocked property owners to obtain a permit. We disagree.

As the Department points out, neither the landlocked property owners nor the trial court offered any evidence or authority to "support the proposition that a right to prescriptive use of another's property may also convey the right to violate a statute." In other words, the fact that the landlocked property owners may have a right to use the easement at issue does not negate their duty to follow the applicable laws and regulations affecting the land over which their easement extends. For example, mere establishment of a right to use of an easement does not permit the easement holder to disregard local zoning ordinances.[46]

The NREPA sets forth a clear mandate that, absent qualification under one of several enumerated exceptions,[47] a person must obtain a permit before placing fill material or maintaining a use in a wetland.[48] And although recognizing that the NREPA expressly provided specific enumerated exceptions, the trial court nevertheless took it upon itself to recognize an additional exception for the landlocked property owners under the circumstances of this case. The trial court

---

[45] *Killips*, 244 Mich App at 261.

[46] See *Bevan v Brandon Twp*, 438 Mich 385, 400; 475 NW2d 37 (1991). See also *Burt Twp*, 459 Mich at 661-662 (holding that even the Department of Natural Resources itself is subject to comply with the local zoning ordinances).

[47] MCL 324.30305.

[48] MCL 324.30304.

reasoned that the enumerated exceptions were created to recognize "that certain other rights would be balanced against, and in some cases take priority over the protection of wetland areas through elimination of any possibly intrusive activities." Therefore, the trial court found that the landlocked property owners could likewise be exempted from the permit requirement as long as they took efforts to minimize their intrusive activities. In so holding, the trial court erred.

As the Department points out, it is a well-established rule of statutory construction that when the Legislature enumerates a list of conditions or exceptions in a statute, "[t]heir enumeration eliminates the possibility of their being other exceptions under the legal maxim *expressio unius est exclusio alterius.*"[49] As the Department explains, the trial court therefore erred in holding "that the exact opposite is true and that, if the Legislature enumerates a list of statutory exceptions, it- . . . must intend to open the door to any other exceptions that a court may deem reasonable." The trial court was not entitled to engage in its own permitting process contrary to the Legislature's express intent and judicially create an additional exception to the permit requirement.

Additionally, we disagree with the trial court that it would be unreasonable to require the landlocked property owners to apply for a proper permit. The trial court's concerns about the additional burdens that may be placed on the landlocked property owners by the permitting process are speculative. And it is the province of the Department,[50] not the court, to assess the

---

[49] *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006). See also Black's Law Dictionary (7th ed), p 1635 ("The expression of one thing is the exclusion of another.").

[50] MCL 324.30301(d); MCL 324.30304.

circumstances and devise a plan to allow the landlocked property owners the most reasonable use of their land while still protecting the state's interest in preserving and protecting the character and integrity of the wetlands.[51] Accordingly, we conclude that the trial court erred by holding that the landlocked property owners were allowed to continue maintaining their pallet pathway without obtaining a proper permit.

We affirm the trial court's decision that the landlocked property owners established the existence of a prescriptive easement over state-owned land, but we reverse the trial court's decision that the landlocked property owners need not follow the statutory requirement of obtaining a permit to place fill material in a wetland area.

---

[51] On this point, we acknowledge the trial court's concerns that installation of a boardwalk system over the full 0.22-mile path might be cost prohibitive. Thus, we would caution the Department to avoid imposing permit requirements that would rise to the level of effectively denying the landlocked property owners the reasonable enjoyment of their property rights.