# STATE OF MICHIGAN

# COURT OF APPEALS

MARK STUEBNER,

Plaintiff-Appellee,

v

MICHAEL G. RIGHTER,

Defendant-Appellant.

UNPUBLISHED
October 24, 2017

No. 334973
Iron Circuit Court
LC No. 15-005222-CZ

Before: K. F. KELLY, P.J., and BECKERING and RIORDAN, JJ.

PER CURIAM.

Following a bench trial, the trial court issued an order granting plaintiff, Mark Stuebner, an easement by prescription, allowing use of a road that ran across property owned by defendant, Michael Righter, to access plaintiff's property. Defendant appeals as of right. We conclude that although the trial court erred in part when analyzing and applying the law with respect to wild lands, we nonetheless affirm.

## I. FACTS

Plaintiff owns 20 acres of land in Iron County, purchased from John Ekes in 1990, near a fish hatchery operated by David and Marlene Kettula.[1] From at least the mid-1970s up to 1990, plaintiff, along with his wife, Nancy Stuebner, and his brothers-in-law, John and Richard Wu, had visited the property as guests of John Ekes. According to Richard, when he first began visiting what would become plaintiff's property, "we used to go through the fish hatchery and there was a bridge that we got across" Cooks Run River and "you would be able to drive across that bridge." However, Richard continued, the forest service "ran some big piece of machinery cross the bridge and caved it in. So then we started using . . . an old road that avoided that bridge to get back to the property." The old road began where a county road ended and crossed over defendant's property. According to David, the road was a "firebreak road,"[2] and he had seen "hundreds" of vehicles use it. Plaintiff testified that he had never asked permission to cross the

---

[1] Plaintiff's land is landlocked.

[2] A firebreak may be defined as "a barrier of cleared or plowed land intended to check a forest or grass fire." *Merriam-Webster's Collegiate Dictionary* (11th ed).

-1-

subject property, and no one had ever told him that he could not use the road. According to plaintiff, he maintained the road by clearing brush and trees, as well as filling ruts with gravel, during the time the property was owned by Ekes. John and Richard stated they also helped perform road maintenance while Ekes owned the property.

In 2003, defendant purchased his property, after which it appears that plaintiff continued to use the firebreak road. In the spring of 2006, plaintiff encountered a locked gate at the point where county property ended and defendant's property began. However, defendant gave plaintiff a key to the gate, and plaintiff continued to use the firebreak road to access his property until the spring of 2015, when defendant refused to allow plaintiff to cross his property.

Shortly thereafter, plaintiff filed a single count complaint seeking an easement by prescription. According to plaintiff, from March 2, 1990 to May 28, 2015, he had used the road running across defendant's property adversely to defendant, using it without permission and without payment of consideration. Following a bench trial, the court found in relevant part that a prescriptive easement had been acquired by plaintiff's predecessor in title against defendant's predecessor in title, that the land at issue was not "wild land," and that permission to use the road given after the prescriptive easement had ripened did not destroy the prescriptive easement.

## II. DISCUSSION

Defendant first argues that plaintiff cannot meet the requirements for an easement by prescription on his own, and that he may not "tack" onto the time period of his predecessor in interest. We disagree. Following a bench trial, this Court reviews de novo a trial court's conclusions of law and its findings of fact for clear error. *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 531; 695 NW2d 508 (2004). "[A] finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Boyd v Civil Serv Comm*, 220 Mich App 226, 235; 559 NW2d 342 (1996).

"An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 679; 619 NW2d 725 (2000); MCL 600.5801(4). The party claiming an easement by prescription carries the burden to "show by satisfactory proof that the use of the defendant's property was of such a character and continued for such a length of time that it ripened into a prescriptive easement." *Mulcahy v Verhines*, 276 Mich App 693, 699; 742 NW2d 393 (2007). In easement by prescription cases, the evidentiary standard is clear and cogent evidence. *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001). " '[C]lear and cogent evidence' is more than a preponderance of evidence, approaching the level of proof beyond a reasonable doubt." *McQueen v Black*, 168 Mich App 641, 645 n 2; 425 NW2d 203 (1988). The standard is similar to clear and convincing evidence, and there must be "little doubt left in the mind of the trier of fact as to the proper resolution of the issue." *Id*. Further, "where there is any reasonable dispute, in light of the evidence . . . the party has failed to meet his burden of proof." *Id*.

A party claiming an easement by prescription who cannot show possession of the easement for the full 15-year statutory period may show possession by " 'tacking' on the

possessory periods of their predecessors-in-interest to achieve the necessary 15-year period." *Matthews v Natural Resources Dep't*, 288 Mich App 23, 38; 792 NW2d 40 (2010). The statutory period required for an easement by prescription "is not fulfilled by tacking successive periods of possession or use[] enjoyed by different persons in the absence of privity between those persons. . . ." *Siegel v Renkiewicz Estate*, 373 Mich 421, 425; 129 NW2d 876 (1964). Claimants may show privity through a "description of the disputed acreage in the deed," or "an actual transfer or conveyance of possession of the disputed acreage by parol statements made at the time of conveyance." *Matthews*, 288 Mich App at 38. There is a "reasonable exemption to the common-law rule requiring parol statements," *id.* at 41, where

> the tacking property owners are "well acquainted" and there is clear and cogent evidence that the predecessors-in-interest "[u]ndoubtedly" intended to transfer their rights to their successors-in-interest, for example, by showing that the successors had "visited and remained on the property and had used [it] for many years prior to their acquisition of the title to the property. [*Id.* (internal quotation marks and citation omitted).]

In *Matthews*, the plaintiffs had visited the property and used the easement beginning in the late 1960s and there was no discussion of an easement at the time of conveyance because the plaintiffs "took it for granted" that the path in question was the means to get to the parcel of land. *Id.* at 28, 29. This Court held that "[w]here predecessors and successors are so intimately acquainted as under the facts here, it would not be reasonably expected for the predecessors to expressly articulate to the successors a right that all parties already believed they possessed." *Id.* at 42.

Plaintiff concedes that his deed does not contain a description of the easement. However, he had been using the road since 1976, along with his predecessor in interest, Ekes. Nancy and her brothers testified that they had been using the road to access the property during the same time period. Plaintiff and Ekes were "intimately acquainted," *id.*, and plaintiff "took for granted," *id.* at 29, that the road crossing defendant's property was the means to access the property. Therefore, the trial court did not commit clear error when it determined that plaintiff presented clear and cogent evidence of privity between himself and Ekes, and that plaintiff could tack onto Ekes's prescriptive period beginning at least in 1976. We therefore affirm the trial court's determination that plaintiff could tack on his predecessor in interest's prescriptive use.

Next, defendant argues that the trial court improperly concluded that defendant's property was not "wild lands" by looking to the parcels surrounding it. We agree, but affirm the trial court nonetheless because plaintiff still satisfies the hostility requirement under the "wild lands" doctrine.

As previously indicated, "[a]n easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton Community Crier, Inc*, 242 Mich App at 679; MCL 600.5801(4). "Adverse" may also be described as "hostile." *Id.* at 681. "Adverse or hostile use is use inconsistent with the right of the owner, without permission asked or given, use such as would entitle the owner to a cause of action against the intruder." *Mumrow v Riddle*, 67 Mich App 693, 698; 242 NW2d 489 (1976). If a parcel of land is "wild and un[e]nclosed," one may acquire an easement by prescription, but

as opposed to "[e]nclosed premises," use alone is insufficient to "give notice of adverse claim . . . ." *Du Mez v Dykstra*, 257 Mich 449, 451; 241 NW 182 (1932). Rather, because the "tacit permission to use wild lands is a kindly act which the law does not penalize by permitting a beneficiary of the act to acquire a right in the other's land by way of legal presumption," a claimant must "bring home to the owner, by word or act, notice of a claim of right before he may obtain title by prescription." *Id*. In order to determine whether a parcel is "wild lands," courts look only to the property itself. See *id*.; *Barley v Fisher*, 267 Mich 450, 452; 255 NW 223 (1934).

Here, the trial court explained that "the easement exists by prescription and I believe that it's not open and wild lands, because there [were] . . . people that lived 50 yards down the road — 100 yards down the road for all the time that this was going on." Although the Court in *Du Mez* stated that the subject land was "wild land," 257 Mich at 449, and the Court in *Barley* concluded that the land was wild, 267 Mich at 453, neither case establishes a clear analytical approach to use in determining whether a parcel constitutes "wild lands." However, the purpose of the doctrine and the discussion within the cases support the conclusion that the subject property should be the only property considered.

*Du Mez* involved an easement claimed by prescription over a portion of the defendant's unused, undeveloped property, property that abutted the plaintiff's improved property. *Du Mez*, 257 Mich at 450. *Barley* involved a claim of title by adverse possession to undeveloped property adjacent to the claimant's improved property. *Barley*, 267 Mich at 451. In both cases, the Supreme Court deemed the servient properties "wild land" based on the character of the servient properties, without regard to the adjacent improved properties. See *Du Mez*, 257 Mich at 451; *Barley*, 267 Mich at 452. In other words, neither case indicates that the court should consider anything other than the character of the subject premises when determining whether it is "wild land."

In the instant case, the only evidence indicating that defendant's property was not "wild land" was the testimony of David Kettula that a previous owner had dug a pond. Defendant began constructing a cottage in 2003, but that construction began well after the prescriptive period of plaintiff and his predecessor in interest. It is undisputed that defendant's parcel had remained undeveloped and unenclosed before defendant purchased it. Therefore, the trial court clearly erred when it found that defendant's property was not "wild lands."

To establish an easement by prescription over wild land, plaintiff must "bring home to the owner, by word or act, notice of a claim of right." *Du Mez*, 257 Mich at 451. We conclude that efforts by plaintiff and his predecessors in title to repair and maintain the road satisfy this requirement. Certainly, plaintiff and his predecessors in title had long used the road and had others use it as well. The record shows that plaintiff and his predecessors in title had been using the road as a means to access the property since at least 1976. Visitors to the property, including the Wu brothers, also used the road, assuming it was the proper way to access the property. Although use alone is insufficient when the premises is "wild lands," *Du Mez*, 257 Mich at 451, plaintiff and the Wu brothers also spent time repairing and maintaining the road during the time plaintiff's predecessor in title owned the property. They repaired ruts with gravel, and they kept the road passable by clearing brush and trees from the road. The trial court heard testimony that, while he owned the property, Eckes used a tractor and road grader to repair and maintain the

road. Using such equipment to repair and maintain the road goes beyond mere use of the road, and signals a claim of right in the road. See *Barley*, 267 Mich at 453 (implying that efforts to improve an area beyond what general trespassers had done could signify a claim of ownership). Accordingly, the trial court did not err when it concluded that plaintiff had satisfied the requirements for an easement by prescription.

Lastly, defendant argues that plaintiff thought he had permission to use the road, negating a claim of easement by prescription. "[P]ermissive use of property, regardless of the length of the use, will not result in an easement by prescription." *West Mich Dock & Market Corp v Lakeland Investments*, 210 Mich App 505, 511; 534 NW2d 212 (1995). "However, when use has been in excess of the prescriptive period by many years, a presumption of a grant arises and the burden shifts to the servient estate owner to show that use was merely permissive." *Reed v Soltys*, 106 Mich App 341, 346; 308 NW2d 201 (1981). In the instant case, given that the use had been in excess of the prescriptive period by many years, it became defendant's burden to show that the use was merely permissive.

At trial, when plaintiff was asked if he "believe[d] that [he] had some sort of indirect permission" from the predecessor in title of defendant's land from 1950 to 1999, plaintiff responded "[o]h I know I did." However, he was not asked and never indicated whether this individual actually gave him express permission or whether plaintiff was merely assuming that the owner would not object. In *West Mich Dock & Market Corp*, 210 Mich App at 512, this Court cited correspondence between the parties, deposition testimony and an affidavit as proof that the defendant had permission to use the disputed property. Here, defendant did not introduce any documentary evidence, affidavits or testimony to establish that defendant's predecessor actually gave plaintiff permission. Therefore, we conclude that defendant has not met his burden to establish that either plaintiff or his predecessor Ekes actually had permission to use the road after 1976.

Affirmed.


/s/ Kirsten Frank Kelly
/s/ Jane M. Beckering
/s/ Michael J. Riordan