*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JUSTIN J. DUIMSTRA, STACY J. DUIMSTRA, JOHN A. MCAREE, JOLENE L. BENNETT, ANDREW J. GAVLEK and MARY K. GAVLEK, Trustees of the ANDREW J. GAVLEK & MARY K. GAVLEK FAMILY REVOCABLE LIVING TRUST,

      Plaintiffs/Counterdefendants-
      Appellants,

v

MICHIGAN LAND & OUTING CO.,

      Defendant/Cross-Defendant,

and

LESTER E. HALLBERG, CLAUDIA K. HALLBERG, RODGER M. WESTERWEEL and SHELLY M. WESTERWEEL, Trustees of the RODGER M. & SHELLY M. WESTERWEEL TRUST,

      Intervenors/Counterplaintiffs/Cross-
      Plaintiffs/Cross-Defendants-
      Appellees.

UNPUBLISHED
March 12, 2026
11:11 AM

No. 370431
Newaygo Circuit Court
LC No. 2021-020725-CK

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

      In this appeal by right, plaintiffs challenge the trial court's rulings holding that title to disputed areas of lakefront property had vested with intervenors through adverse possession. Specifically, the trial court determined that intervenors Rodger and Shelly Westerweels as Trustees of the Rodger M. and Shelly M. Westerweel Trust (the Westerweels), and intervenors Lester and

-1-

Claudia Hallberg (the Hallbergs), had each obtained title through adverse possession to the disputed sections of lakeshore property on Emerald Lake in Newaygo County, Michigan. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This property dispute involves a portion of land designated as part of a boulevard in the plat. The individual parties undisputedly own certain parcels in the vicinity. The layout of the parties' respective properties is best understood by referring to the following map that was made in 2011 using data from the Newaygo County GIS system [Geographic Information System] and modified to reflect the current owners of each parcel.



The Westerweels and Hallbergs each had a dock extending into the lake from this corner of the boulevard, and they each moored a boat at their respective docks. It is evident from the photographs in the record that the area depicted on the above map as the boulevard consists of a road running roughly along the lakeside borders of the platted lots, with another area of land from the road to the water's edge. The plat dedicated the "streets, boulevards, and alleys as shown in said plats" to "the sole and only use of the property owners." The area of land between the road and the water forms the basis for the instant dispute. The Westerweels claimed title by adverse possession to the strip of land running from their dock to the road, and the Hallbergs similarly claimed title by adverse possession to the strip of land running from their dock to the road. These portions of the boulevard were designated respectively as the "Westerweel Beach" and "Hallberg Beach."

Plaintiffs initiated this action by filing an action to quiet title to the boulevard area extending from their properties to the lakeshore. The Michigan Land & Outing Company (MLOC), which had registered the plat in 1906 for the Michigan Land & Outing Co. Subdivision that included the properties at issue, was the only defendant named by plaintiffs in the complaint.

Plaintiffs alleged that this company was no longer in existence.[1]  Plaintiffs claimed that MLOC had abandoned any interest it may have had in the boulevard and that plaintiffs thus maintained ownership to the lakeshore in fee simple because their respective lots were only separated from the lake by a right-of-way.

The trial court granted the Westerweels' and the Hallbergs' motions to intervene, and intervenors advanced their claims of ownership over their respective beaches by adverse possession.  Plaintiffs contested intervenors' adverse possession claims and moved for summary disposition.

The trial court denied plaintiffs' motion for summary disposition.  The court ruled that there was evidence establishing a genuine question of material fact whether the Hallbergs and their predecessors had obtained title to the Hallberg beach through adverse possession by using the beach in the manner of ownership since 1950.  The court also ruled that there was evidence establishing a genuine question of material fact whether the Westerweels owned the Westerweel beach in fee simple as a result of being front lot owners or through adverse possession as established by the historical use of the beach by Westerweel family members that had owned the Westerweel parcel since 1952.

The Hallbergs subsequently filed a motion for summary disposition arguing that there was no genuine issue of material fact that their predecessors in title had obtained title to the Hallberg beach by adverse possession.  The trial court determined that the evidence reflected no genuine issue of material fact that previous owners of the Hallbergs' parcel going back to 1963 had made exclusive use of the Hallberg beach area, that this use included maintaining a dock and anchoring boats, and that transfers in ownership of the Hallbergs' parcel had also included the Hallberg beach and dock.  The trial court discussed evidence regarding the use of the Hallberg beach by the chain of owners of the Hallbergs' parcel since 1963.  The Hallbergs purchased the property in 2000.  Accordingly, the trial court ruled that title to the beach area had vested in a previous owner of the Hallberg property by 1979 through adverse possession and that the Hallbergs therefore currently owned the Hallberg beach.  The court thus granted the Hallbergs' motion for summary disposition.

The matter proceeded to a bench trial regarding the status of the Westerweel beach.  The Westerweels' parcel had been in their family since 1952, and the trial court discussed Rodger Westerweel's testimony that his family members had exclusively used and occupied the Westerweel beach since 1958 when Rodger was a child and the property was owned by Rodger's grandparents.  The trial court held that title to the Westerweel beach had been obtained through adverse possession by 1974.

The trial court denied plaintiffs' motion for judgment notwithstanding the verdict or a new trial.  Plaintiffs now appeal.

## II.  SUMMARY DISPOSITION

---

[1] Michigan Land & Outing Co. is not a party to this appeal.

On appeal, plaintiffs first argue that the trial court erred by denying their motion for summary disposition, and granting summary disposition in favor of the Hallbergs, because neither the Hallbergs nor Westerweels could establish the requisite elements of adverse possession.

This Court reviews a trial court's ruling on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

"A party claiming adverse possession must show clear and cogent proof of possession that is actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for the relevant statutory period." *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018). "When the elements of adverse possession have been met, the law presumes that the true owner, by his acquiescence, has granted the land, or interest to the land, so held adversely." *Id*. (quotation marks and citation omitted). "[S]uccessive periods of adverse possession by different parties can be joined or 'tacked' to satisfy the 15-year statutory period, but only if there was privity of estate." *Houston v Mint Group, LLC*, 335 Mich App 545, 560; 968 NW2d 9 (2021).

Plaintiffs contend that the trial court erred in its findings regarding the Hallbergs by asserting that the Hallbergs failed to establish the requisite elements of "hostility" and "exclusivity" for adverse possession. Plaintiffs, however, confine their discussion to post-1983 events, disregarding the trial court's determination that title to the Hallberg beach vested in the Hallberg parcel by adverse possession as of 1979. Plaintiffs do not engage with this dispositive finding or its implications for their arguments concerning subsequent events. Their appellate brief simply overlooks the foundation of the trial court's decision. Assuming, arguendo, the truth of plaintiffs' allegations regarding events after 1983, plaintiffs fail to articulate any legal basis by which such events could divest title already obtained via adverse possession by 1979. In *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015), this Court held that an appellant's failure to address the basis of the lower court's ruling obviates the need for appellate review. Plaintiffs further assert, without substantive analysis, that there was no privity of estate between the Hallbergs and their predecessors in title. Once again, plaintiffs fail to address the trial court's reasoning to the contrary, and, accordingly, we decline to consider granting relief on this basis. *Id*. Plaintiffs' challenge to the trial court's summary disposition concerning the Westerweel beach is similarly deficient. Plaintiffs do not meaningfully address the trial court's reliance on the extensive, decades-long use of the beach by the Westerweel family as the basis for finding a genuine issue of material fact regarding the establishment of title by adverse possession. Consequently, we likewise decline to address plaintiffs' request for relief on this ground. *Id*.

### III. BENCH TRIAL

Plaintiffs further contend that the trial court erred, following the bench trial, by concluding that the Westerweels acquired title to the Westerweel beach through adverse possession.

"Actions to quiet title are equitable in nature, and equitable rulings are reviewed de novo." *Houston*, 335 Mich App at 557. When a bench trial has been held, we review the trial court's conclusions of law de novo and its findings of fact for clear error. *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Id*.

-4-

As previously articulated, a party seeking to establish title by adverse possession must present clear and cogent evidence demonstrating actual, continuous, open, notorious, exclusive, hostile, and uninterrupted possession for the statutorily prescribed period. *Marlette Auto Wash, LLC v Marlette Oil & Gas, LLC*, 501 Mich 192, 202 (2018). Plaintiffs contend that the Westerweels failed to satisfy the element of hostility, asserting that the evidence uniformly demonstrated permissive use of the beach in question. In support, plaintiffs rely on the testimony of Rodger Westerweel, who indicated that neighboring property owners had reached mutual understandings regarding the allocation of beach areas for their respective use.

At trial, Rodger Westerweel testified that his grandparents acquired the subject parcel in 1952, with title subsequently vesting in his parents and ultimately in himself and his wife. Rodger has frequented the family cottage since the early 1960s. He indicated that the family has maintained a dock at the same location on the lake continuously since 1952. Photographic evidence introduced at trial depicted Rodger, his grandparents, and other family members utilizing the Westerweel beach, dock, and boats for various recreational purposes, including fishing, swimming, sunbathing, and social gatherings with neighbors from the mid-1960s through 2020. While Rodger conceded on cross-examination that property owners in the area generally maintained a mutual understanding regarding their respective portions of the beach, he also testified that his family treated and used the Westerweel beach as their own for approximately 70 years, engaging in activities consistent with those of riparian proprietors. [2]

With respect to the trial court's finding that no member of the Westerweel chain of title obtained permission to use the Westerweel beach or exercise riparian rights, we discern no clear error. *Walters v Snyder*, 239 Mich App 453, 456 (2000). Plaintiffs further argue that the absence of objections from neighboring property owners to the Westerweel family's use of the beach constitutes implied permission, thereby negating the hostility requirement for adverse possession. However, the record demonstrates that the Westerweel family's use of the beach was consistent with the manner in which a riparian owner would exercise their rights, and the prolonged absence of disputes does not, in itself, negate the hostility element of adverse possession. Michigan jurisprudence recognizes that a riparian owner possesses exclusive rights, including the erection and maintenance of docks and the permanent anchoring of boats, whereas nonriparian owners are limited to reasonable surface uses such as boating, fishing, swimming, and temporary anchoring. *Astemborski v Manetta*, 341 Mich App 190, 196; 988 NW2d 857 (2022).

---

[2] As our Supreme Court has explained:

> Riparian rights are property rights. " 'Riparian land' is defined as a parcel of land which includes therein a part of or is bounded by a natural water course," and the owners of such land enjoy certain exclusive rights. These rights include the right to erect and maintain docks, as well as to permanently anchor boats off the shore. [*2000 Baum Family Trust v Babel*, 488 Mich 136, 166; 793 NW2d 633 (2010) (citations omitted).]

Furthermore, although the term "riparian" is technically used to define land abutting a river while land abutting a lake is technically defined as "littoral," it is common practice to use the term "riparian" for both types of land. *Id*. at 138 n 1.

Furthermore, the term 'hostile' in the context of adverse possession is a legal term of art, denoting use that is inconsistent with the rights of the true owner, undertaken without permission, and sufficient to entitle the owner to bring an action against the possessor. *Houston v Mint Group, LLC*, 335 Mich App 545, 559 (2021). The trial court correctly observed that there was no evidence of efforts to oust the Westerweel family from the beach between 1958 and 1974. The adverse or hostile nature of use arises when such use is made under a claim of right where no such right actually exists. *Astemborski*, 341 Mich App at 199. On appeal, plaintiffs have failed to carry their burden of demonstrating that the trial court's findings regarding the Westerweels' claims of right to the property were clearly erroneous. *Walters*, 239 Mich App at 456.

Plaintiffs additionally assert that, even assuming the hostility requirement was met, the Westerweels are precluded from invoking the doctrine of tacking to satisfy the fifteen-year statutory period, on the grounds that the current parties did not acquire title to the cottage until 2019.

Successive periods of adverse possession by different parties may be aggregated, or 'tacked,' in order to satisfy the fifteen-year statutory period, provided there is privity of estate between the successive possessors. *Houston*, 335 Mich App at 560. Privity of estate may be established where: (1) the deed specifically describes the disputed property; (2) there is an actual transfer or conveyance of the disputed property by parole statements contemporaneous with the conveyance; or (3) the successor is 'well-acquainted' with the predecessor, having visited and used the disputed property for many years prior to obtaining title. *Marlette Auto Wash*, 501 Mich at 203; see also *Matthews v Natural Resources Dep't*, 288 Mich App 23, 39-41 (2010). In the third scenario, privity arises from the mutual understanding that the disputed property is included in the transfer.

In this case, the record reflects that the Westerweel property has remained within the family for approximately seventy years,[3] with continuous use of the beach area and dock as though they were integral to the family's holdings. The direct familial succession renders the privity of estate requirement indisputable. In their briefing and arguments on the issue, plaintiffs have not established error in the trial court's determination permitting the Westerweels to rely on tacking to fulfill the requirements for adverse possession under these facts. *Id.*

Finally, plaintiffs contend that the trial court erred in denying their motion for judgment notwithstanding the verdict (JNOV), reiterating the arguments previously advanced regarding the court's findings. This Court reviews a trial court's denial of JNOV de novo. *Detroit/Wayne Co Stadium Auth v Drinkwater, Taylor, & Merrill, Inc*, 267 Mich App 625, 642 (2005). JNOV is appropriate only where, viewing the evidence and all legitimate inferences in the light most favorable to the nonmoving party, there is insufficient evidence to create a triable issue of fact. *Id.* at 642-643. Upon review, and based on our conclusions already stated herein, the record supports the trial court's finding that plaintiffs failed to demonstrate a lack of evidence sufficient to create

---

[3] We note that some of the previous family members that owned the Westerweel property had different last names, but these factual details are not pertinent to resolution of the issues on appeal. We simply refer to them collectively as the Westerweel family for the sake of convenience.

a factual question for the factfinder. Accordingly, plaintiffs have not shown that the trial court erred in denying their motion for JNOV.

Affirmed. Defendants having prevailed in full are entitled to tax costs. MCR 7.219(A).

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick