# STATE OF MICHIGAN

# COURT OF APPEALS

MARY ANN LAMKIN and STEVE LAMKIN,

       Plaintiffs-Appellants,

v

EUGENE HARTMEIER, CYNTHIA
HARTMEIER, KEVIN HARTMEIER, DENNIS
MCCOMB, GLORIA MCCOMB, DANIEL
ENGRAM, DANIELLE ENGRAM, JAMES
BEAUDOIN, CECILE LAUDENSLAGER,
ANGELA CHRISTIE, KIMBERLY KRASKA,
JOAN BEAUDOIN, AARON KIRBY, DAMON
HARTMEIER, DENISE ENGRAM, DEANN
ENGRAM, DEREK ENGRAM, CATHERINE
BARRETT,

       Defendants-Appellees,

and

RONALD THYBAULT and the Estate of MARY
WECKESER,

       Defendants.

UNPUBLISHED
September 1, 2016

No. 326986
Livingston Circuit Court
LC No. 12-026600-NZ

---

Before: FORT HOOD, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

GADOLA, J. (*dissenting*).

I respectfully dissent. Although I agree that defendants failed to present sufficient evidence to establish an easement by necessity over Island Shore Drive, I strongly disagree that all of the defendants presented clear and cogent evidence establishing a prescriptive easement over the roadway. I further disagree with the majority's conclusion that the trial court erred by dismissing plaintiffs' nuisance claim in its entirety.

-1-

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case involves a dispute over the use of a private dirt road, Island Shore Drive, which runs along the northern shore of Oneida Lake in Pinckney, Michigan, and provides ingress and egress to M-36 for multiple lots on the northern side of the lake. In the late 1800s, Thomas Shehan owned a 40-acre parcel of property bordering the northwest shore of Oneida Lake. He split the property into 10 lots and deeded an express easement, now known as Island Shore Drive, through each lot to provide access to the main roadway. In 1922, a portion of property on the northeast side of the lake was platted into Cady's Point Comfort Subdivision. In 1933, another portion of land on the northeast shore was platted into Island Lake Shores Subdivision. Some of the lots in Cady's Point and the lots composing Island Lake Shores were bordered by Lake View Drive, which now connects into Island Shore Drive.[1]

According to plaintiffs, all of the lots in Cady's Point and Island Lake Shores previously had access to main roads through other unrelated properties. At some point before plaintiffs purchased their two Shehan lots in 1980, the lots in Cady's Point and Island Lake Shores became landlocked, and the lot owners began using Island Shore Drive for ingress and egress to M-36. An express agreement allowing the Cady's Point and Island Lake Shores lot owners to use Island Shore Drive was apparently never executed.

Plaintiffs asserted that at the time they purchased their property in 1980, there were only 14 year-round homes using Island Shore Drive, but by 2008, 29 year-round homes relied on the road for ingress and egress to M-36. As traffic increased, plaintiffs attempted to control the speed of vehicles using Island Shore Drive and the use of recreational vehicles by subdivision lots owners. On December 7, 2004, plaintiffs sent a memo to the lot owners in Cady's Point and Island Lake Shores, asserting that they had acquired "a **very limited** use through prescription" of Island Shore Drive for ingress and egress to M-36, which did not include recreational use. In 2005, plaintiffs carved inverted speedbumps (ruts) into the portion of Island Shore Drive running through their property, and placed poles in concrete blocks along the roadway. Plaintiffs asserted that after they attempted to control the use of Island Shore Drive, defendants engaged in numerous acts of harassment and retaliation against them.

In February 2012, plaintiffs filed a complaint against defendants, asserting a claim of nuisance for defendants' alleged failure to maintain and repair the roadway, speeding in excess of plaintiffs' posted speed limit, creating unnecessary noise when passing through plaintiffs' property, committing acts of trespass, and unreasonably interfering with plaintiffs' enjoyment of

---

[1] In 1949, the Livingston County Road Commission passed a resolution purporting to change the name of Lake View Drive to Island Shore Drive to match the name of the private road running through the Shehan lots, but this was apparently ineffective because in 2005, the Hamburg Township Board of Trustees passed a second resolution changing the name of Lake View Drive to Island Shore Drive. This opinion refers to Lake View Drive, the current easterly portion of Island Shore Drive, by its original name to differentiate it with the westerly portion of Island Shore Drive running through the Shehan lots.

their land.[2]  Plaintiffs also asserted a claim of trespass and malicious destruction of property, alleging that defendants destroyed their easement pole markers, trees, and fauna surrounding the roadway, and improperly used the road for driving recreational vehicles and snowmobiles, walking, walking dogs, and dumping trash and fecal matter.  Plaintiffs lastly asserted a claim of intentional infliction of emotional distress (IIED) stemming from defendants' actions.

In January 2013, plaintiffs filed a motion for declaratory and injunctive relief, asking the court to prevent defendants, their families, and their invitees from

> engaging in acts of trespass, nuisance, and malicious destruction of property including, but not limited to, littering, speeding, spinning of tires, the making of loud noises, the making of obscene gestures, dog walking, use of mopeds, use of ATVs, driving vehicles off the driveway, the destruction of the [plaintiffs'] property and fauna, and recreational walking, and to limit their activity to driving motor vehicles through [plaintiffs'] property at a safe speed not in excess of the posted fifteen miles per hour.

In March 2013, the Hartmeier defendants filed a motion to consolidate plaintiffs' action, Case No. 12-26600-NZ, with another case, Case No. 13-27319-CH, in which property owners within Cady's Point and Island Lake Shores brought a quiet-title action against plaintiffs and other property owners along Island Shore Drive, asserting that they had acquired an easement by necessity and prescription to use the roadway.  On March 14, 2013, the trial court entered an order consolidating the cases.

Plaintiffs filed a supplemental memorandum in support of their motion for declaratory and injunctive relief, and against the quiet-title action, arguing that the Cady's Point and Island Lake Shores lot owners could not establish an easement by necessity because they did not share a common grantor with the owners of the Shehan lots.  Plaintiffs further argued that, even if defendants could establish an easement by prescription, the majority of their actions on the roadway would not fall within the scope of such an easement.  Following a hearing on plaintiffs' motion, the trial court denied plaintiffs' request for declaratory and injunctive relief and ordered the parties "to refrain from impeding or otherwise interfering with the use of the easement."

Thereafter, several defendants in Case No. 12-26600-NZ filed motions for summary disposition.  They argued that plaintiffs' trespass claim should fail because defendants developed use rights in Island Shore Drive by prescription and necessity, which Mary Ann acknowledged in a deposition and in her 2004 memo, and their use of the roadway by walking and other forms of travel did not impose a greater burden on the servient estate than vehicular travel.  Several defendants argued that the plat maps for Cady's Point and Island Lake Shores provided access

---

[2] The majority opinion gratuitously notes plaintiff Mary Ann Lamkin's litigiousness and her involvement in unrelated civil and criminal legal matters concerning the dispute over the use of Island Shore Drive.  I fail to see the relevance of those matters to the legal issues before us in this case.  Whether plaintiff Mary Ann Lamkin is or is not a commendable person should have no bearing upon the matter now under this Court's consideration.

via Island Shore Drive, and the township acknowledged this right by adopting resolutions changing the name of Lake View Drive to Island Shore Drive. Regarding the nuisance claim, defendants argued that plaintiffs had not demonstrated significant harm resulting from defendants' conduct, and plaintiffs destroyed the surface of the roadway by their own actions. Further, defendants argued that none of their actions rose to the level of extreme and outrageous behavior necessary to sustain an IIED claim. Some defendants noted that MCL 600.5805(10) provides a three-year limitations period for trespass, nuisance, and IIED claims, yet plaintiffs relied on conduct that occurred more than three years before they filed their complaint.

Plaintiffs filed an omnibus response to defendants' motions and renewed their motion for declaratory and injunctive relief, arguing that an easement by necessity did not exist because they did not share a common grantor with defendants. They argued that each property owner within Cady's Point and Island Lake Shores was required to individually establish a prescriptive easement, but the Hartmeiers, Engrams, and McCombs did not own their respective lots for the prescriptive period, and only the McCombs filed any documentation from their predecessor-in-title. Additionally, they argued that the Cady's Point and Island Lake Shores plat maps did not create a right to use Island Shore Drive because the roadway was not within the plats and the developer did not own the land underlying Island Shore Drive.

At a hearing on the parties' motions, the trial court concluded that defendants made "a prima facie showing that an easement by prescription exists," relying in part on Mary Ann's statement in her deposition that "from 1980 to 2005 all of the landowners . . . used Island Shore Drive as a means across their property by numerous modes of transportation." The court concluded that even if plaintiffs granted defendants express permission to use the roadway in their 2004 memo, "defendants or their predecessors in interest used Island Shore Drive continuously from 1980 to 2004, 24 years." The court also concluded that "any significant interference with the use of the plaintiffs' property was caused by plaintiffs' own actions" and that defendants' conduct "was not so outrageous in character or so extreme in degree as to go beyond all possible bounds of decency." Therefore, the trial court granted defendants' motions for summary disposition regarding plaintiffs' nuisance, trespass, malicious destruction of property, and IIED claims pursuant to MCR 2.116(C)(10), and denied plaintiffs' renewed motion for declaratory and injunctive relief. The court then issued a written order to this effect, stating that defendants "have an easement by prescription and by necessity over that portion of Island Shore Drive which extends through the property owned by Plaintiffs," and asserting that the order "resolves the last pending claim and closes . . . Case No. 12-26600-NZ."

Plaintiffs filed a motion for reconsideration, accompanied by a 32-page affidavit from Mary Ann. Defendants objected to plaintiffs' motion and filed a joint motion to strike Mary Ann's affidavit, arguing in part that the affidavit was improper because it was based on facts known before the trial court issued its decision granting defendants' motions for summary disposition. Following a hearing, the court granted defendants' motion to strike the affidavit, and subsequently issued an opinion and order denying plaintiffs' motion for reconsideration.

## II. STANDARD OF REVIEW

This Court reviews a trial court's grant or denial of a motion for summary disposition de novo. *Oliver v Smith*, 269 Mich App 560, 563; 715 NW2d 314 (2006). In reviewing a motion

under MCR 2.116(C)(10), courts consider the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted in a light most favorable to the party opposing the motion. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A court may grant a motion for summary disposition if the evidence shows that there is no genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law. *Id.*

## III. TRESPASS CLAIM

Plaintiffs first argue that the trial court erred by dismissing their trespass claim[3] against defendants because defendants did not establish an easement over Island Shore Drive by either necessity or prescription, and even if they did, defendants' use exceeded the scope of the easement. Under Michigan law, "[r]ecovery for trespass to land . . . is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Wiggins v City of Burton*, 291 Mich App 532, 555; 805 NW2d 517 (2011) (citation and quotation marks omitted). "Once such an intrusion is proved, the tort has been established, and the plaintiff is presumptively entitled to at least nominal damages." *Id.* In other words, trespass produces liability regardless of the degree of harm caused by the invasion. *Id.* Permission or authority to enter land constitutes a defense to a claim of trespass. *Boylan v Fifty Eight, LLC*, 289 Mich App 709, 723; 808 NW2d 277 (2010). However, a trespass may occur if the user's activities exceed the scope of permission or authority. *Id.*; see also *Schadewald v Brule*, 225 Mich App 26, 40; 570 NW2d 788 (1997) (noting that activities exceeding the "reasonable exercise of the use granted by the easement may constitute a trespass to the owner of the servient estate").

"An easement is a right to use the land of another for a specific purpose." *Killips v Mannisto*, 244 Mich App 256, 258; 624 NW2d 224 (2001). "An easement does not displace the general possession of the land by its owner, but merely grants the holder of the easement qualified possession only to the extent necessary for enjoyment of the rights conferred by the easement." *Schadewald*, 225 Mich App at 35. In the absence of an express easement, an easement can be created by operation of law, including an easement by necessity. *Chapdelaine v Sochocki*, 247 Mich App 167, 172; 635 NW2d 339 (2001). An easement by necessity arises if "an owner of land splits his property so that one of the resulting parcels is landlocked except for access across the other parcel." *Id.* Thus, an easement by necessity "[1] may arise either by grant, where the grantor created a landlocked parcel in his grantee, or [2] it may arise by reservation, where the grantor splits his property and leaves himself landlocked." *Id.* at 172-173.

In this case, I agree that defendants did not present any evidence showing that the property underlying Island Shore Drive and the property making up Cady's Point and Island Lake Shores was ever owned by a common grantor. Therefore, the trial court erred by concluding that defendants established an easement by necessity over Island Shore Drive.

---

[3] In their complaint, plaintiffs jointly titled their trespass claim as "Trespass/Malicious Destruction of Property." As defendants pointed out below, malicious destruction of property is a criminal, not a civil, offense. See MCL 750.377a.

I disagree, however, with the majority's conclusion that each of the defendants in this case established an easement by prescription over Island Shore Drive. "An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 679; 619 NW2d 725 (2000). Adverse use is use inconsistent with the rights of the owner, without permission asked or given, and such use as would entitle the owner to a cause of action for trespass. *Id.* at 681. Continuous use does not necessarily require constant use, and depending on the nature and character of the right claimed, seasonal use may constitute continuous use. See *Dyer v Thurston*, 32 Mich App 341, 344; 188 NW2d 633 (1971). However, the use must "be in keeping with the nature and character of the right claimed." *Id.* The party attempting to establish a prescriptive easement bears the burden of proof by clear and cogent evidence. *Killips*, 244 Mich App at 260.

A party attempting to establish a prescriptive easement may "tack" on the possessory period of his or her predecessors-in-title to achieve the 15-year period by showing privity of estate. *Id.* at 259. "This privity may be shown in one of two ways, by (1) including a description of the disputed acreage in the deed, or (2) an actual transfer or conveyance of possession of the disputed acreage by parol statements made at the time of conveyance." *Id.* (citations omitted). As our Supreme Court explained in *Siegel v Renkiewicz Estate*, 373 Mich 421, 425; 129 NW2d 876 (1964),

> [I]t has long been the rule in Michigan that the statutory period of possession or use[] necessary for obtaining title by adverse possession or easement by prescription is not fulfilled by tacking successive periods of possession or use[] enjoyed by different persons in the absence of privity between those persons[,] established by inclusion by reference to the claimed property in the instruments of conveyance or by parol references at time of conveyances.

Nothing in Michigan law permits "collective tacking," by which a party asserting a right to an easement by prescription may rely on the activities of third-parties to establish an easement without showing privity of estate between them. See *Killips*, 244 Mich App at 259.[4] Rather, a party attempting to establish a prescriptive easement must individually show entitlement to such an easement either by his or her individual conduct, or by tacking on his or her use with the use of a predecessor-in-title and proving privity of estate. *Id.*

In connection with this requirement the majority opinion states, "We have found no published opinions expressly addressing the extent to which a party seeking to establish an easement by prescription may rely on uses made by neighbors . . . ." This is unsurprising, given that it is the wrong inquiry. Whether an inchoate group of neighbors or predecessors-in-interest have used the property for an extensive period of time, as the majority asserts was the case here, is simply irrelevant. This is because collective tacking is not permitted under Michigan law, a

---

[4] See also *Keiser v Feister*, unpublished opinion per curiam of the Court of Appeals, issued March 2, 2010 (Docket No. 282531) (holding that a group of neighbors could not rely on their collective activities to establish the prerequisites of a prescriptive easement).

point the majority seems to acknowledge in its discussion of *Keiser v Feister*, unpublished opinion per curiam of the Court of Appeals, issued March 2, 2010 (Docket No. 282531). Rather, as both *Siegel*, 373 Mich at 425, and *Killips*, 244 Mich App at 259, make clear, *each landowner* must individually establish, through clear and cogent evidence, its own entitlement to a prescriptive easement through either its own conduct, or by tacking its use to its predecessor-in-title *and* proving privity of estate.[5] The fact that there is circumstantial evidence that *someone*— even an unnamed someone who used to live on or own the property—had been using Island Shore Drive for ingress and egress, whether for 10, 20, or 100 years, has no legal bearing upon the ability of *these defendants* to use the road for ingress and egress.

In this case, Cady's Point was platted in 1922 and Island Lake Shores was platted in 1933. The record does not reveal when individual lots within the two subdivisions were improved with houses. Although there may have been lot owners within the subdivisions who used Island Shore Drive as early as 1922 or 1933 respectively, defendants cannot rely on this fact to establish the prescriptive right of every lot owner within the two subdivisions to use Island Shore Drive. Likewise, although Mary Ann stated in her deposition that some neighbors used Island Shore Drive for various purposes without objection from her between 1980 and 2005, this does not suggest that every defendant involved in the current lawsuit is entitled to a prescriptive easement over the roadway, particularly when the record shows that many lots were not developed with homes until after plaintiffs purchased their property in 1980. Accordingly, I believe the trial court erred to the extent it concluded that defendants established a collective prescriptive easement over Island Shore Drive.

Regarding whether individual defendants satisfied the requirements to establish a prescriptive easement over the roadway, Joan and James Beaudoin both offered affidavits in support of their motion for summary disposition, in which they stated that they purchased their home in 1986, and continuously used Island Shore Drive without permission by walking and motorized and non-motorized transportation until 2004 or 2005. Cecile Laudenslager stated in an affidavit offered in support of her motion for summary disposition that she purchased her home in 1972 and continuously used Island Shore Drive without permission by various modes of transportation, including motorized and non-motorized travel and walking, until 2004 or 2005. Angela Christie also offered an affidavit in support of her motion for summary disposition, in which she stated that she purchased her home in 1987 and continuously used Island Shore Drive without permission for motorized and non-motorized travel, and for walking with and without her dog, until 2004 or 2005. The trial court did not err by concluding that these defendants established a prescriptive easement over Island Shore Drive because they provided evidence that they engaged in open, notorious, adverse, and continuous use of the roadway for a period in excess of 15 years.

In support of her motion for summary disposition, Kimberly Kraska provided affidavits in which she explained that her father purchased her home in 1960. She asserted that she began

---

[5] The majority opinion is notable for its failure to address the holdings in *Siegel* and *Killips*, which are binding upon this Court.

continuously using the roadway in the 1970s, but did not begin living in her home year round until 1990. Kraska's claim of continuous year-round use beginning in the 1970s appears to be inconsistent with her statement that she did not begin living in her home full-time until 1990. Kraska admitted in her affidavit that plaintiffs gave permission to use the roadway in 2004 or early 2005. Although seasonal use may be sufficient to satisfy the continuous use requirement to establish a prescriptive easement, this is only the case if the seasonal use is consistent with the nature and character of the right claimed. *Dyer*, 32 Mich App at 344. In this case, Kraska is claiming a year-round right to use Island Shore Drive, rather than a seasonal right. Although Kraska established at least a seasonal right to use Island Shore Drive for certain purposes, it is not clear that she used the roadway on a year-round basis for the necessary 15-year period when she did not begin living in her home full-time until 1990, and admitted that plaintiffs granted permission to use the roadway in 2004 or early 2005. Therefore, in my opinion, the trial court erred by concluding that Kraska conclusively established a year-round right to use Island Shore Drive.

Plaintiffs argue that, even if some defendants are able to establish a prescriptive easement over Island Shore Drive, which I conclude the Beaudoins, Laudenslager, and Christie have done, and Kraska has done for at least seasonal use, the scope of their easements should be limited to using vehicles for ingress and egress to M-36 and should not include walking, walking with dogs, riding bikes, and operating any form of non-vehicular transportation on the roadway. I disagree. "A prescriptive easement is generally limited in scope by the manner in which it was acquired and the 'previous enjoyment.' " *Heydon v MediaOne*, 275 Mich App 267, 271; 739 NW2d 373 (2007). "One who holds a prescriptive easement is allowed to do such acts as are necessary to make effective the enjoyment of the easement unless the burden on the servient estate is unreasonably increased; the scope of the privilege is determined largely by what is reasonable under the circumstances." *Id.* In my estimation, walking and other mechanized forms of travel do not place a greater burden on plaintiffs' estate than vehicular travel. Therefore, I do not believe the trial court erred by concluding that these uses fell within the scope of the easements established by the above-mentioned defendants.

Regarding the other defendants, in support of their motion for summary disposition, the Hartmeiers presented a deed showing that they purchased their home in 1999, and affidavits in which they stated that they continuously used Island Shore Drive for a variety of purposes without permission until plaintiffs issued their 2004 memo. Accordingly, the Hartmeiers demonstrated only 5 years of adverse use of Island Shore Drive, and they did not present any evidence regarding their predecessor-in-title's use of the roadway. Further, the Hartmeiers did not present evidence showing that their right to use Island Shore Drive was conveyed by deed or oral representations at the time of transfer to prove privity of estate for tacking purposes.

Again, a party may only tack on the possessory period of a predecessor-in-title by showing privity of estate. See *Killips*, 244 Mich App at 259. Privity can be shown either by (1) including a description of the easement in a deed or (2) oral representations at the time of

-8-

conveyance. *Id.*[6] The majority argues that nothing in Michigan law requires that "proof of the requisite privity with predecessors" be based solely on direct, as opposed to circumstantial, evidence. However, in this case, there is simply no evidence, direct or circumstantial, demonstrating privity of estate, as it is currently defined by Michigan law, between the Hartmeiers and their predecessors-in-title. Therefore, the trial court erred by concluding that the Hartmeiers conclusively established a prescriptive easement over Island Shore Drive, such that they were entitled to summary disposition on plaintiffs' trespass claim.

In their brief in support of summary disposition, the Engrams asserted that they and their predecessors-in-title used Island Shore Drive without permission for more than 15 years. Daniel Engram stated in an affidavit that he and his wife purchased their home in 2000 from Robert Missel, and Missel died in 2009. He further claimed that plaintiffs did not object to their use of Island Shore Drive until 2008 when he received a letter from plaintiffs' attorney. The Engrams did not offer evidence regarding Missel's specific use of Island Shore Drive, and they did not offer any evidence, direct or circumstantial, to show privity of estate by demonstrating that their right to use the roadway was transferred by deed or oral representations at the time of conveyance. See *Killips*, 244 Mich App at 259. Therefore, the trial court erred by concluding that the Engrams conclusively established a prescriptive easement over Island Shore Drive.

In support of their motion for summary disposition, the McCombs stated that they purchased their home in 2003 and used Island Shore Drive continuously after that time. They also provided an affidavit from Phyllis Davenport, their predecessor-in-title, who purchased the property in 1992, and stated that she and her family used Island Shore Drive by any mode of transportation they deemed appropriate without limitation during their ownership period. In their own affidavits, the McCombs stated that plaintiffs did not object to their use of the roadway until 2008. Although the period between Davenport's purchase of the property in 1992 and plaintiffs' purported objection to the McCombs' use of Island Shore Drive in 2008 exceeded 15 years, the McCombs did not offer any evidence, direct or circumstantial, to prove privity of estate, which

---

[6] This Court applied an exception to these requirements in *Matthews v Dep't of Natural Resources*, 288 Mich App 23, 41; 792 NW2d 40 (2010), which held that a party could tack on the use of their predecessor-in-title in the absence of descriptions in the deed or parol statements at the time of transfer because the conveyance of title did not involve "an arms-length, third-party transfer," but rather involved property owners who had "visited and remained on the property and had used the pathway for many years before their acquisition of the title to the property." Under those facts, this Court held that the requirement of parol statements could "be satisfied in the limited circumstances where the tacking property owners are 'well acquainted' and there is clear and cogent evidence that the predecessors-in-interest 'undoubtedly' intended to transfer their rights to their successors-in-interest, for example, by showing that the successors had 'visited and remained on the property and had used it for many years prior to their acquisition of the title to the property.'" *Id.* at 41-42 (citation omitted). I find *Matthews* inapplicable to the case at hand because none of the defendants have shown that they acquired title to their property by any means other than arms-length, third-party transactions, nor have they shown that they were "well acquainted" with the land for many years before acquiring title.

was required to tack on the possessory period of their predecessor-in-title. Proving privity of estate required the McCombs to show that either (1) the right to use Island Shore Drive was included in their deed, or (2) the right to use the roadway was orally represented at the time of conveyance. See *Killips*, 244 Mich App at 259. Because the McCombs did not present evidence showing privity of estate, the trial court erred by concluding that they established a prescriptive easement over Island Shore Drive.[7]

In sum, the trial court properly dismissed plaintiffs' trespass claim with regard to the Beaudoins, Laudenslager, and Christie because these defendants presented sufficient evidence to establish a year-round prescriptive right to use Island Shore Drive and their use of the roadway did not exceed the scope of their prescriptive easements. However, the trial court erred by concluding that Kraska presented sufficient evidence to conclusively establish a year-round prescriptive easement, and that the Hartmeiers, Engrams, and McCombs presented sufficient evidence to establish a prescriptive easement over Island Shore Drive. Accordingly, in my opinion, the court improperly dismissed plaintiffs' trespass claim with respect to those defendants.

Plaintiffs also argue that the trial court erred by dismissing their trespass claim because they "alleged trespassory conduct occurring outside of the boundaries of [Island Shore Drive], where it is not even arguable that Defendants had a right to be." Plaintiffs further argue that defendants could not have acquired a right to destroy plaintiffs' property. Plaintiffs do not specify the alleged acts of trespass that occurred outside the boundaries of Island Shore Drive, and they do not specify what property defendants destroyed that could have supported a claim of trespass. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). To the extent plaintiffs argue that certain acts of trespass occurred outside the boundaries of Island Shore Drive, or that defendants' destruction of their property was sufficient to sustain their trespass claim, I would consider this argument abandoned on appeal.

## IV. NUISANCE CLAIM

Plaintiffs argue that the trial court erred by dismissing their nuisance claim. A defendant may be liable for private nuisance if "(a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and

---

[7] On appeal, several defendants argue that Mary Ann's statements in her deposition and the 2004 memo, suggesting that limited easements by prescription and necessity existed over Island Shore Drive, are binding and support the trial court's ruling below. However, an admission or concession made by the parties or their attorneys regarding a question of law is not binding. See *People v Metamora Water Service, Inc*, 276 Mich App 376, 385; 741 NW2d 61 (2007). Mary Ann's statements in this regard were non-binding legal conclusions and do not constitute an independent reason to affirm the trial court's ruling.

unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct." *Capital Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 429; 770 NW2d 105 (2009) (citation and quotation marks omitted). In their complaint, plaintiffs alleged that defendants created a nuisance by failing to maintain the portion of Island Shore Drive running across plaintiffs' property, by speeding in excess of the posted speed limit, and by committing various unspecified acts of trespass. Plaintiffs offer no authority to suggest that defendants were obliged to repair the portion of Island Shore Drive running across plaintiffs' land, and they do not explain how defendants' purported failure to maintain this portion of the road interfered with their enjoyment of their property or caused significant harm. Additionally, plaintiffs admitted that they destroyed the surface of the roadway by carving out inverted speedbumps, and they objected to collective maintenance of the roadway through the use of a special assessment district. Plaintiffs do not explain how defendants' alleged acts of speeding, honking horns, spinning tires, and other similar conduct caused them significant harm. In my opinion, the trial court properly dismissed plaintiffs' nuisance claim because they failed to demonstrate the necessary elements to sustain their claim.

## V. MOTION FOR RECONSIDERATION

Lastly, plaintiffs argue that the trial court erred by striking Mary Ann's affidavit without holding an evidentiary hearing and by refusing to treat their motion for reconsideration as a motion for relief from judgment under MCR 2.612(C) because the affidavit demonstrated that defendants perpetrated a fraud on the trial court. Plaintiffs cite no authority suggesting that the trial court was required to treat their motion for reconsideration as a motion for relief from judgment, and they do not explain what fraud occurred or how Mary Ann's affidavit established that fraud. Therefore, I would consider this issue abandoned on appeal. *Mitcham*, 355 Mich at 203.

For the reasons cited above, I would affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. While the outcome I would reach in this case may not be as "tidy" as what the majority seems to favor, I believe it is dictated by the controlling precedent. The majority implies that my approach constitutes a narrow, restrictive, and harsh reading of the law and suggests that its conclusion represents a more fair reading thereof in light of the equities of the situation. However, the majority reaches this equitable outcome by disregarding *Siegel*, 373 Mich at 425, and *Killips*, 244 Mich App at 259, which require a party attempting to establish a prescriptive easement by tacking to prove privity of estate. I do not believe we may take an equitable approach to this case in light of the controlling legal precedent. Therefore, I dissent.

/s/ Michael F. Gadola